# THE COE F. YOUNG.[1]

## IRONS v. THE COE F. YOUNG.

## OSBORN v. SAME.

## HARVEY v. SAME.

(*District Court, S. D. New York. January 17, 1891.*)

1. COLLISION—STEAM AND SAIL—DUTY OF SAIL-VESSEL—BEATING OUT TACK.
    A sailing vessel, beating in a channel, is not obliged to run out her tacks to her disadvantage in the tide, provided she does not mislead or embarrass other vessels that are bound to keep out of her way.

2. SAME—STEAM-VESSEL—LOOKOUT.
    The tug C. F. Y. was going up the North river on a clear day. A small sloop was beating up-stream ahead of her. The tug had no lookout except the master at the wheel. The sloop changed her tack when some 1,000 feet from the New York shore, in order to keep in the flood-tide. The river there is about 3,000 feet wide. The tug when the sloop went about was more than 150 feet distant from the sloop. The tug collided with and sank the sloop, and was *held* solely liable for the collision in failing to keep a proper lookout.

In Admiralty. Suits for damage by collision; the first suit being for loss of the vessel, the second for personal injuries, and the third for loss of personal effects.

*Hyland & Zabriskie,* for libelants.

*E. G. Benedict,* for claimants.

BROWN, J. In the forenoon of April 19, 1890, as the steam-tug Coe F. Young was going up the Hudson river with the last of the flood-tide, when opposite Twenty-Sixth or Twenty-Seventh street she came in collision with the sloop Mary, which was beating up-river against a northerly wind, and cut her in two, damaging also the personal effects of two of the libelants, and injuring the libelant Osborn, who was thrown into the water by the blow. Very shortly before collision the sloop had tacked on the New York side, and had filled away on her starboard tack, heading, as her witnesses allege, about four points above a line straight across the river. There is considerable conflict in the testimony in regard to the direction of the wind; whether the sloop's long tack was her starboard tack or her port tack; as to the distance of the point of collision from the New York shore; and whether the sloop, as the defendants allege, came about very suddenly, and almost directly under the bows of the tug, without running out her port tack, so as to render collision unavoidable. The last point is most important, the others being mate-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

rial only as they affect that. The river there, from the ends of the docks on each side, is about 3,000 feet wide. Taking all the evidence together, I am satisfied that the collision took place about 1,000 feet from the end of the New York docks. That the distance is much greater than that stated by a number of the libelants' witnesses is to be inferred, not merely from the testimony of disinterested witnesses for the defendants, and the probabilities of the case, but from the testimony also of the libelants' witness Sands, who, though evidently mistaken in some parts of his testimony, is not likely to be much mistaken as to the considerable distance he had to row in a small boat, stated as about 800 feet, in picking up the first *debris* from the wreck. The libelants' witnesses mostly testify that the sloop did not tack until she had run within 150 feet of the New York docks. Several of the defendants' witnesses say that she tacked far away from the docks, and near to the tug. The captain of the tug says that when he first noticed the sloop she was on his starboard hand off Fourteenth street upon her tack to the eastward, and from 100 to 150 feet eastward of his course; and that when she came about off Twenty-Seventh or Twenty-Eighth street she was about the same distance eastward of him, having twice in the interval come up into the wind, and filled away again.

The captain is evidently mistaken in his testimony. The sloop, with the wind as it was, could not have come up river from Fourteenth street to Twenty-Seventh street in the way he states. It was doubtless off Twenty-Third street, instead of Fourteenth street, that he first saw this schooner, as the answer alleges. If she was then 100 or 150 feet away, she was certainly more than that distance away from him when she tacked. All agree that at the time of collision she had come about completely, and that her sails were full. It is not material in this case whether the sloop ran as near the New York shore as she might have done, or not. There was more of the flood-tide out in the stream than along the shore. The sloop had the right to avail herself of this advantage in navigation by shortening her tacks, provided she did not mislead or embarrass other vessels that were bound to keep out of her way. I think that the tug did have abundant time and space to have kept out of the way of the sloop from the time she tacked, had any proper watch been kept upon her movements. There was no lookout, however, on the tug, except the pilot alone; and there is some evidence that he jumped to the wheel just before collision; in other words, was not watching the sloop's movements. The tug was unincumbered, she could be very quickly handled, and she could be maneuvered certainly as easily as the sloop, as she exceeded her in speed. Whether the sloop ran out her tack or not I regard, therefore, as immaterial in this case, because not the proximate cause of the collision. The real cause was the failure to keep a proper lookout. Had this been done, I am satisfied the collision would have been avoided.

I allow the libelant Osborn $545 damages for personal injuries and effects, with costs. A reference may be taken, to compute the damages in the other cases.